Michael D. Braun (SBN 167416)
**KUZYK LAW, LLP**
2121 Avenue of the Stars, Ste. 800
Los Angeles, California 90067
Telephone: (213) 401-4100
Facsimile: (213) 401-0311
Email: mdb@kuzykclassactions.com

Peter N. Wasylyk (pro hac vice pending)
**LAW OFFICES OF PETER N. WASYLYK**
1307 Chalkstone Avenue
Providence, RI 02908
Telephone: (401) 831-7730
Facsimile: (401) 861-6064
Email: pnwlaw@aol.com

*Counsel for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**ANNETTE ALARCON, DEBORAH PATT, and DEIDRE MOORHEAD on behalf of themselves and all others similarly situated,**

**Plaintiffs,**

**v.**

**THE COCA-COLA COMPANY**

**Defendant.**

**CASE NO.:**

**CLASS ACTION**

**COMPLAINT FOR DAMAGES, EQUITABLE, DECLARATORY, AND INJUNCTIVE RELIEF**

Plaintiffs Annette Alarcon, Deborah Patt and Deidre Moorhead ("Plaintiffs"), individually and on behalf of themselves and all others similarly situated, bring this class action against Defendant The Coca-Cola Company ("Defendant" or "Coca-Cola"), and on the basis of personal knowledge, information and belief, and the investigation of counsel, allege as follows:

## INTRODUCTION

1. This is a proposed class action on behalf of California and New York classes of consumers seeking redress for Defendant's deceptive practices associated with the advertising, labeling, and sale of its Minute Maid Fruit Punch ("Products") which claim contain "100% Natural Flavors."







2. Unfortunately, the claim that the Product consists of "100% Natural Flavors" is false and misleading, because the Product contains a synthetic, non-natural flavoring ingredient in the form of industrially manufactured citric acid which, as Defendant's own label concedes, was added to "provide[] tartness," a flavor in the Product.

3. Despite prominently and boldly representing on the front of the package that the Products contain "100% Natural Flavors," the inclusion of manufactured citric acid, a synthetic ingredient whose function is to impart flavor (*i.e.,* tartness), belies this representation rendering it false, misleading, and in violation of the law.

4. Defendant knows that consumers are willing to pay more for products promising "100% Natural Flavors" because they perceive such products to be more natural and healthier than products containing synthetic or artificial ingredients. Indeed, Defendant purposefully advertised its Product with the intention that consumers notice and rely on the representation that the Product consists of only (i.e., 100%) "Natural Flavors."

5. Reasonable consumers such as Plaintiffs do not have the scientific or specialized knowledge necessary to independently identify ingredients in the Product as being inconsistent with Defendant's advertised claim of 100% Natural Flavors." Rather, they must depend on the accuracy and truthfulness of Defendant's Product label.

6. Throughout the applicable Class Periods (defined below), Defendant has falsely represented the true nature of its Product, and as a result of this false and misleading labeling, was able to sell this Product to hundreds of thousands of unsuspecting consumers throughout California and New York.

7. Plaintiffs allege that Defendant's conduct is in breach of warranty, violates California's Business and Professions Code § 17200, *et. seq.,* California's Business & Professions Code § 17500, *et. seq.,* California Civil Code § 1750, *et seq*., and N.Y. Gen. Bus. Law §§ 349 and 350 et seq.,

## **JURISDICTION AND VENUE**

8. Jurisdiction of this Court is proper under 28 U.S.C. § 1332(d)(2). Diversity jurisdiction exists as Plaintiff Alarcon is a resident of Lancaster, California, Plaintiff Patt is a resident of Holley, New York, Plaintiff Moorhead is a resident of Brooklyn, New York and Defendant The Coca-Cola Company is a Delaware corporation headquartered in Atlanta, Georgia. The amount in controversy exceeds $5,000,000 for the Plaintiffs and members of the Class collectively, exclusive of interest and costs, by virtue of the combined purchase prices paid by Plaintiffs and

members of the putative Class, and the profits reaped by Defendant from its transactions with Plaintiffs and the Class, as a direct and proximate result of the wrongful conduct alleged herein, and by virtue of the injunctive and equitable relief sought.

9. Venue is proper within this judicial district pursuant to 28 U.S.C. § 1391 because a substantial portion of the underlying transactions and events complained of occurred and affected persons and entities located in this judicial district, and Defendant has received substantial compensation from such transactions and business activity in this judicial district.

## **PARTIES**

10. Plaintiff Annette Alarcon is a resident of Lancaster, California. Plaintiff Alarcon is a frequent purchaser of Minute Maid Fruit Punch having purchased the Product on several occasions over the past two years from Walmart locations in Lancaster, California and Ralph's in North Hills, California.

11. When Ms. Alarcon purchased the Products, she saw and relied on the representation made on the Product label that it consisted of "100% Natural Flavors." It was a material representation on which she relied in making her decision to purchase the Product.

12. Ms. Alarcon believed the representation on the Product's label was accurate, particularly in that it consisted of "100% Natural Flavors," (*i.e.*, no synthetic or artificial flavoring ingredients).

13. Ms. Alarcon believed that Defendant lawfully marketed and sold the Products.

14. Ms. Alarcon relied on Defendant's labeling and was misled thereby.

15. Ms. Alarcon would not have purchased the Product, or would have purchased the Product on different terms had she known the truth about their contents.

16. Ms. Alarcon was injured in fact and lost money as a result of Defendant's improper conduct.

17. If Ms. Alarcon has occasion to believe that Defendant's marketing and labeling are truthful, non-misleading, and lawful, she would purchase Defendant's Products in the future.

18. Plaintiff Deborha Patt is a resident of Holley, New York. Plaintiff Patt is a frequent purchaser of Minute Maid Fruit Punch having purchased the Product on several occasions within the past two years from Walmart locations in Brockport and Albion, New York.

19. When Ms. Patt purchased the Products, she saw and relied on the representation made on the Product label that it consisted of "100% Natural Flavors." It was a material representation on which she relied in making her decision to purchase the Product.

20. Ms. Patt believed the representation on the Product's label was accurate, particularly in that it consisted of "100% Natural Flavors," (*i.e.*, no synthetic or artificial flavoring ingredients).

21. Ms. Patt believed that Defendant lawfully marketed and sold the Products.

22. Ms. Patt relied on Defendant's labeling and was misled thereby.

23. Ms. Patt would not have purchased the Product, or would have purchased the Product on different terms had she known the truth about their contents.

24. Ms. Patt was injured in fact and lost money as a result of Defendant's improper conduct.

25. If Ms. Patt has occasion to believe that Defendant's marketing and labeling are truthful, non-misleading, and lawful, she would purchase Defendant's Products in the future.

26. Plaintiff Deidre Moorhead is a resident of Brooklyn, New York. Plaintiff Moorhead is a frequent purchaser of Minute Maid Fruit Punch having purchased on

several occasions over the past two years from Stop and Shop and Shop Rite locations in Brooklyn, New York.

27. When Ms. Moorhead purchased the Products, she saw and relied on the representation made on the Product label that it consisted of "100% Natural Flavors." It was a material representation on which she relied in making her decision to purchase the Product.

28. Ms. Moorhead believed the representation on the Product's label was accurate, particularly in that it consisted of "100% Natural Flavors," (*i.e.*, no synthetic or artificial flavoring ingredients).

29. Ms. Moorhead believed that Defendant lawfully marketed and sold the Products.

30. Ms. Moorhead relied on Defendant's labeling and was misled thereby.

31. Ms. Moorhead would not have purchased the Product, or would have purchased the Product on different terms had she known the truth about their contents.

32. Ms. Moorhead was injured in fact and lost money as a result of Defendant's improper conduct.

33. If Ms. Moorhead has occasion to believe that Defendant's marketing and labeling are truthful, non-misleading, and lawful, she would purchase Defendant's Products in the future.

34. Defendant The Coca-Cola Company is one of the largest beverage companies in the world and is the manufacturer, marketer, and seller of the Minute Maid brand of beverages.

## GENERAL ALLEGATIONS

### A. Citric Acid Is a Flavoring Ingredient in the Product

35. Acidulants are chemical compounds that impart a sour or acidic flavor to food products while also enhancing the perception of sweetness. Citric acid is the

single most widely used acidulant in food and beverage formulation. In beverages, such as the Product at issue here, citric acid adds a clean, sharp tartness.[1]

36. By their own admission, citric acid functions as a flavor in Defendant's Product, (*i.e.*, "Provides Tartness"), which is a taste and a characterizing sensory attribute of the Product.

37. While acidulants such as citric acid may also have a preservative effect, for that purpose to have been intended, Defendant, by law, would have had to disclose it. 21 C.F.R. §101.22(j) "A food to which a chemical preservative(s) is added shall …. bear a label declaration stating both the common or usual name of the ingredient(s) and a separate description of its function, e.g., "preservative", "to retard spoilage", "a mold inhibitor", "to help protect flavor" or "to promote color retention"). They did not.

38. Additionally, this Product is pasteurized.[2] It is also considered a high acid beverage, (pH 2.86) wherein microbial stability can be achieved by pasteurization, thereby obviating or minimizing the need for supplemental preservation.[3]

39. At bottom, by their own admission (*i.e.,* "provides tartness") combined with the fact this is a highly acidic pasteurized beverage unquestionably shows that the citric acid was intended as, and functions as, a flavoring in the Product.

---

[1] Agriculture Institute, *Acidulants in Food: Enhancing Flavor and Shelf L*ife*,* May 28, 2025). Available at https://agriculture.institute/food-chemistry-and-physiology/acidulants-in-food-flavor-shelf-life/#what-are-acidulants. (Last visited July 13, 2026).

[2] See e.g., https://stopandshop.com/groceries/product/minute-maid-fruit-punch-59-oz-ctn/2326 ("Drink up, friend. Pasteurized. No preservatives added. 100% natural flavors"). (Last visited October 10, 2026)

[3] Momeni, S., et al., *The pH of beverages in the United States*, The Journal of the American Dental Association, December 2015. Available at https://www.researchgate.net/publication/285672746_The_pH_of_beverages_in_the_United_States

### B. The Citric Acid Used in Defendant's Product is Synthetic

40. Citric acid is among the most common food additives used today. It occurs naturally in certain fruits and vegetables and historically was extracted from citrus fruits such as lemons. While "[t]he average consumer [][remains] under the impression that the added citric acid listed in the ingredients of prepared foods, beverages and vitamins is derived from natural sources such as lemons and limes," … the ingredient list is quite misleading since the added citric acid is not procured through natural sources. More accurate terminology would list this substance as *manufactured citric acid ("MCA")*."[4]

41. As commercial demand for citric acid increased, scientists sought alternative means to produce it and in the early 20th century discovered that citric acid could be acquired more cheaply through a chemical fermentation process – the method by which nearly all the commercially available citric acid is produced today.[5] The overwhelming majority of this manufactured citric acid is made using a mutant strain of the black mold *Aspergillus niger*.[6]

42. As explained by the United States Department of Agriculture Agricultural Marketing Service ("USDA AMS"), "[t]raditionally by extraction from

---

[4] Sweis, I, et al., *Potential role of the common food additive manufactured citric acid in eliciting significant inflammatory reactions contributing to serious disease states: A series of four case reports*, Toxicology Reports (2018) ("Sweis"). Available at https://pmc.ncbi.nlm.nih.gov/articles/PMC6097542/.

[5] Independent Chemical, *Comon Uses of Citric Acid*, April 1, 2019. Available at https://independentchemical.com/blogs/common-uses-of-citric-acid-20045.aspx (last visited June 10, 2026).

[6] Sweis, *supra* n. 4.

citrus juice, [citric acid is] no longer commercially available. It is now extracted by fermentation of a carbohydrate substance (often molasses) by citric acid bacteria, *Aspergillus niger* (a mold) or *Candida guilliermondii* (a yeast). Citric acid is recovered from the fermentation broth by a lime and sulfuric acid process in which the citric acid is first precipitated as a calcium salt and then re-acidulated with sulfuric acid."[7]

43. By all accounts, MCA is considered artificial. As a preliminary matter, the manufacturing process for food-grade citric acid uses synthetic industrial solvents. The FDA has codified the "[s]olvent extraction process for citric acid" at 21 C.F.R. § 173.280, which provides that the "recovery of citric acid from conventional *Aspergillus niger* fermentation liquor may be safely used to produce food-grade citric acid in accordance with the following conditions: (a) The solvent used in the process consists of a mixture of *n*-octyl alcohol meeting the requirements of § 172.864 of this chapter, ***synthetic*** isoparaffinic petroleum hydrocarbons meeting the requirements of § 172.882 of this chapter, and tridodecylamine." (Emphasis added.)

44. The National Organic Standards Board similarly concluded that citric acid produced by fermentation of carbohydrate substrates and purified by the lime-sulfuric acid method "is synthetic because the citric acid comes into contact with lime and sulfuric acid and because of the chemical change from citric acid to calcium citrate and then back to citric acid during purification."[8]

---

[7] NOSB Materials Database, Citric Acid, Chemistry. Available at https://www.ams.usda.gov/sites/default/files/media/Citric%20Acid%20TR%201995.pdf (last visited June 10, 2026).

[8] NOSB Materials Database, OFPA Criteria § 2119(m)3). Available at https://www.ams.usda.gov/sites/default/files/media/Citric%20Acid%20TR%201995.pdf (last visited June 10, 2026).

45. The U.S. Environmental Protection Agency ("EPA") published a supply chain profile for citric acid that illustrates its industrial manufacturing process. The process begins with a corn substrate -- corn starch that has been enzymatically hydrolyzed into glucose syrup by industrial enzymes. *A. niger* is introduced and subjected to deliberate metabolic stress — trace metal starvation, excess carbon, forced low pH to produce calcium citrate. The citric acid is then recovered and refined through methods including the lime/sulfuric acid method, the solvent extraction method, or the ion exchange method – commonly using industrial chemicals such as sulfuric acid and calcium hydroxide."[9]




46. In addition to the chemical processing, the *Aspergillus niger* mold strains used in the production of MCA themselves have been subjected to extensive genetic

[9] EPA, Citric Acid Supply Chain Profile. Available at https://www.epa.gov/system/files/documents/2023-03/Citric%20Acid%20Supply%20Chain%20Profile.pdf (last visited October 10, 2026).

modification, resulting in "countless generations of genetically modified mutant variants,[] specialized for industrial-scale economics."[10]

47. The U.S. Food & Drug Administration has similarly determined that MCA is not natural. The FDA has sent warning letters to food manufacturers for using the term "natural" or "all natural" on products containing citric acid. In a warning letter to Hirzel Canning Company, the FDA stated that its policy regarding the use of the term "natural" "means that nothing artificial or synthetic has been included in, or has been added to, a food that would not normally be expected to be in the food," and that "the addition of calcium chloride and citric acid to these products preclude use of the term 'natural' to describe this product."[11] The FDA issued a substantially identical warning to Oak Tree Farm Dairy, Inc., stating that the use of the terms "100% Natural" and "All Natural" was inappropriate "because it contains citric acid."[12]

48. Finally, at its most basic level, the dictionary definition of the term artificial (*i.e*., something made or produced by human beings through industrial processes, as opposed to occurring naturally) squarely applies to MCA. *e.g*., "made, produced, or done by humans especially to seem like something natural;" [13] "made by

---

[10] Serge Gregoire, *Avoid citric acid: a mold byproduct!* (July 13, 2021), available at https://www.linkedin.com/pulse/avoid-citric-acid-mold-byproduct-serge-gregoire/ (last visited June 10, 2026)

[11] FDA Warning Letter to Hirzel Canning Company (Aug. 29, 2001) attached hereto as Exhibit A.

[12] FDA Warning Letter to Oak Tree Farm Dairy, Inc. (Aug. 16, 2001) attached hereto as Exhibit B.

[13] Merriam-Webster, available at https://www.merriam-webster.com/dictionary/artificial?src=search-dict-box (last visited June 10, 2026)

people, often as a copy of something natural."[14] Manufactured citric acid, which is produced through industrial fermentation using genetically modified mold strains, chemical solvents including synthetic petroleum hydrocarbons, and multi-step chemical extraction processes, plainly qualifies as artificial under any common understanding of the term.

49. Defendant is one of the largest beverage companies in the world and manufactures, markets, and sells the Minute Maid-branded Products at issue in this action through large-scale commercial beverage operations. Given the industrial scale of its operations and its demand for citric acid, Defendant does not and cannot source the citric acid used in the Products from natural citrus fruit extraction. Indeed like all commercial food and beverage manufacturers of its size, Defendant uses industrially manufactured citric acid produced through the aspergillus niger fermentation process described above. The citric acid in Defendant's Products is used to impart flavor and is synthetic, rendering the front-of-package statement "100% Natural Flavors," false, misleading and deceptive.

### C. Consumer Demand for Natural Products and Natural Flavors

50. The clean label movement has been called "the largest shift in American food habits since World War II."[15] The term encompasses many things, but is most often associated with foods that are natural, healthy, and devoid of additives and

[14] Cambridge Dictionary, Available at https://dictionary.cambridge.org/us/dictionary/english/artificial (last visited June 10, 2026)

[15] *Clean Labels, Public Relations or Public Health*, Center For Science in the Public Interest (2017), available https://www.cspinet.org/sites/default/files/2022-03/Clean%20Label%20report.pdf (last visited June 15, 2026).

preservatives.[16] Consumer interest in clean labels is driven by health concerns. A recent survey found that healthfulness was among the biggest drivers of food-purchasing decisions and that that "limited or no artificial ingredients" is one of the top ways Americans define healthy eating.[17] Nearly 70% of consumers say they would pay more for food and beverage products with a clean label.[18]

51. According to a recent natural and organic study conducted by the Acosta Group, 59% of shoppers prioritize natural and organic groceries believing that they "are better for them" (healthier) and they "tend to have fewer synthetic chemicals and additives." [19]

52. By representing the Products contain "100% Natural Flavors," Defendant seeks to capitalize on consumer preference for clean label products. In a survey undertaken by L.E.K, around 1600 consumers were asked which claims were the most important to them when buying food and drink products. Results indicated the most

---

[16] *Clean label trend is evolving - consumers still willing to pay a price premium*, Valio, May 29, 2023. Available at https://www.valio.com/food-solutions-for-companies/articles/clean-label-trend-is-evolving-and-consumers-willing-to-pay-a-price-premium/ (last visited June 15, 2026).

[17] International Food Information Council. 2016 Food & Health Survey: consumer Attitudes toward Food Safety, Nutrition & Health, commissioned by the International Food Information Council (IFIC) Foundation. 2016 Food & Health Survey https://ific.org/wp-content/uploads/2025/04/2016-Food-and-Health-Survey-Report_-FINAL_0.pdf. (last visited June 15, 2026).

[18] https://www.kalsec.com/natural-food-protection/insights/clean-label-food-preservation. (last visited June 15, 2026).

[19] Acost Group, Opportunities to Drive Additional Growth for Natural and Organic Products, February 20, 2025. Available at https://www.acosta.group/new-acosta-group-study-highlights-opportunities-to-drive-additional-growth-for-natural-and-organic-products/ (last visited July 13, 2026).

popular claim to be "no artificial ingredients" with "all natural" claims of almost equal import.[20]

Figure 2
Percentage of US consumers purchasing 'frequently or always' based on food claim (2018)




Note: Question: How frequently has your household purchased food with the following attributes or claims over the past 12 months when they were available?
Source: L.E.K. Consumer Survey and analysis

53. By failing to properly label its Products, Defendant has misled and deceived consumers in violation of the laws pled herein.

54. As a result of Defendant's unlawful and deceptive conduct, Plaintiffs and members of the Class have been harmed.

## ECONOMIC INJURY

55. Plaintiffs sought to buy Products that were lawfully labeled, marketed, and sold.

56. Plaintiffs saw and relied on Defendant's misleading labeling of its Products.

[20] L.E.K., https://www.lek.com/insights/ei/clean-label-food-ingredients (last visited August 30, 2024); Food Industry Executive, Consumers Say They Want to Eat Healthy, March 4, 2019. Available at https://foodindustryexecutive.com/2019/03/consumers-say-they-want-to-eat-healthy/ (last visited June 15, 2026).

57. Plaintiffs believed that the purchased Products were made with "100% Natural Flavors."

58. Plaintiffs believed that the Products were lawfully marketed and sold.

59. In reliance on the claims made by Defendant regarding the qualities of its Products, Plaintiffs paid a price premium.

60. As a result of their reliance on Defendant's misrepresentations, Plaintiffs received Products that contained ingredients which they reasonably believed they did not contain.

61. Plaintiffs received Products that were unlawfully marketed and sold.

62. Plaintiffs lost money and thereby suffered injury as they would not have purchased these Products and/or paid as much for them absent the misrepresentation.

63. Defendant knows that the claim the Products are made with "100% Natural Flavors" is material to a consumer's purchasing decision.

64. Plaintiffs altered their positions to their detriment and suffered damages in an amount equal to the amounts they paid for the Products they purchased, and/or in additional amounts attributable to the deception.

65. By engaging in the false and deceptive conduct alleged herein, Defendant reaped, and continues to reap financial benefits in the form of sales and profits from its Products.

66. Plaintiffs, however, would be willing to purchase Products again in the future should they be able to rely on Defendant's marketing as truthful and non-deceptive.

## CLASS ACTION ALLEGATIONS

67. Plaintiffs bring this action on behalf of themselves and on behalf of classes of all others similarly situated consumers defined as follows:

a. **California:** All persons in California who purchased the Class Products in California during the Class Period.

b. **New York:** All persons in California who purchased the Class Products in California during the Class Period.

c. **Class Period** is the maximum time allowable as determined by the statute of limitation periods accompanying each cause of action.[21]

68. Plaintiffs bring this Class pursuant to Federal Rule of Civil Procedure 23(a), and 23(b)(1), 23(b)(2), 23(b)(3) and 23(c)(4).

69. Excluded from the Class are: (i) Defendant and its employees, principals, affiliated entities, legal representatives, successors and assigns; and (ii) the judges to whom this action is assigned.

70. Upon information and belief, there are tens of thousands of members of the Class. Therefore, individual joinder of all members of the Class would be impracticable.

71. There is a well-defined community of interest in the questions of law and fact affecting the parties represented in this action.

72. Common questions of law or fact exist as to all members of the Class. These questions predominate over the questions affecting only individual Class members. These common legal or factual questions include but are not limited to:

[21] The statute of limitations for Plaintiffs' claims under California Civil Code § 1750, *et seq*., and GBL §§349-350 is three years. Accordingly for these claims the Class Period begins 3 years from the date of the initial filing to the present. Plaintiffs' claims under California's Business and Professions Code § 17200, *et. seq.,* California's Business & Professions Code § 17500, *et. seq.,* breach of express warranty and GBL have a statute of limitations of 4 years.

a. Whether Defendant marketed, packaged, or sold the Class Products to Plaintiffs and those similarly situated using false, misleading, or deceptive statements or representations;

b. Whether Defendant omitted or misrepresented material facts in connection with the sales of its Products;

c. Whether Defendant participated in and pursued the common course of conduct complained of herein;

d. Whether Defendant has been unjustly enriched as a result of its unlawful business practices;

e. Whether Defendant's actions violate the Unfair Competition Law, Cal. Bus. & Prof. Code §§17200, *et seq*. (the "UCL");

f. Whether Defendant's actions violate the False Advertising Law, Cal. Bus. & Prof. Code §§17500, *et seq*. (the "FAL");

g. Whether Defendant's actions violate the Consumers Legal Remedies Act, Cal. Civ. Code §§1750, *et seq*. (the "CLRA");

h. Whether Defendants' actions violate N.Y. Gen. Bus. Law § 349 et seq;

i. Whether Defendants' actions violate N.Y. Gen. Bus. Law § 350 et seq;

j. Whether Defendant should be enjoined from continuing the above-described practices;

k. Whether Plaintiffs and members of the Class are entitled to declaratory relief; and

l. Whether Defendant should be required to make restitution, disgorge profits, reimburse losses, and pay damages as a result of the above-described practices.

73. Plaintiffs' claims are typical of the claims of the Class, in that Plaintiffs were consumers who purchased Defendant's Products. Plaintiffs are no different in

any relevant respect from any other Class member who purchased the Products, and the relief sought is common to the Class.

74. Plaintiffs are adequate representatives of the Class because their interests do not conflict with the interests of the members of the Class they seek to represent, and they have retained counsel competent and experienced in conducting complex class action litigation. Plaintiffs and their counsel will adequately protect the interests of the Class.

75. A class action is superior to other available means for the fair and efficient adjudication of this dispute. The damages suffered by each individual Class member likely will be relatively small, especially given the relatively small cost of the Products at issue and the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's conduct. Thus, it would be virtually impossible for members of the Class individually to effectively redress the wrongs done to them. Moreover, even if members of the Class could afford individual actions, it would still not be preferable to class-wide litigation. Individualized actions present the potential for inconsistent or contradictory judgments. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

76. In the alternative, the Class may be certified because Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate preliminary and final equitable relief with respect to each Class.

77. The requirements for maintaining a class action pursuant to Rule 23(b)(2) are also met, as Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole.

**FIRST CAUSE OF ACTION**
**Breach of Express Warranty**

78. Plaintiffs incorporate each and every allegation contained in the paragraphs above as if restated herein.

79. Plaintiffs' express warranty claims are based on violations of N.Y. CLS UCC § 2-313 and § 2-607 and Cal. Com. Code §2313. Defendants were afforded reasonable notice of this claim in advance of the filing of this complaint.

80. Defendant made express warranties to Plaintiffs and members of the Class that the Products contained "100% Natural Flavors."

81. The express warranties made to Plaintiffs and members of the Class appear on every Product label. This warranty regarding the nature of the Product marketed by Defendant specifically relates to the goods being purchased and became the basis of the bargain.

82. Plaintiffs and the Class purchased the Products in the belief that they conformed to the express warranties that were made on the Products' labels.

83. Defendant breached the express warranties made to Plaintiffs and members of the Class by failing to supply goods that conformed to the warranties it made. As a result, Plaintiffs and members of the Class suffered injury and deserve to be compensated for the damages they suffered.

84. Plaintiffs and the members of the Class paid money for the Products. However, Plaintiffs and the members of the Class did not obtain the full value of the advertised Products. If Plaintiffs and other members of the Class had known of the true nature of the Products, they would not have purchased them or paid less for them. Accordingly, Plaintiffs and members of the Class have suffered injury in fact and lost money or property as a result of Defendant's wrongful conduct.

85. Plaintiffs and the Class are therefore entitled to recover damages, punitive damages, equitable relief such as restitution and disgorgement of profits, and declaratory and injunctive relief.

**<u>SECOND CAUSE OF ACTION</u>**
**Unlawful" Business Practices in Violation of**
**The Unfair Competition Law ("UCL")**
**Bus. & Prof. Code §§17200, *et seq*.)**

86. Plaintiffs incorporate each and every allegation contained in the paragraphs above as if restated herein.

87. The UCL defines unfair business competition to include any "unlawful, unfair or fraudulent" act or practice, as well as any "unfair, deceptive, untrue or misleading" advertising. Cal. Bus. Prof. Code §17200.

88. A business act or practice is "unlawful" if it violates any established state or federal law.

89. Defendant's acts, omissions, misrepresentations, practices, and/or non-disclosures concerning the Products alleged herein, constitute "unlawful" business acts and practices in that they violate the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. §§301, et seq. and its implementing regulations, including, at least, the following sections:

a. 21 U.S.C. §343(a), which deems food misbranded when its labeling contains a statement that is false or misleading in any particular;
b. 21 C.F.R. §102.5(a)-(d), which prohibits the naming of foods so as to create an erroneous impression about the presence or absence of ingredient(s) or component(s) therein;

c. 21 U.S.C. §§331 and 333, which prohibits the introduction of misbranded foods into interstate commerce.

90. California's Sherman Food, Drug, and Cosmetic Law ("Sherman Law"), Cal. Health & Safety Code §109875 *et seq*., broadly prohibits the misbranding of food. Cal. Health & Safety Code §110765; *See, also* Cal. Health & Safety Code §110660 ("Any food is misbranded if its labeling is false or misleading in any particular."). The Sherman Law incorporates all food labeling regulations and any amendments to those regulations adopted pursuant to the Food, Drug, and Cosmetic Act of 1938 as the food labeling regulations of California. Cal. Health & Safety Code §§110100(a), 110665, 110670.

91. As described in detail above, by failing to label the Products in a manner that accurately represents its contents, Defendant generally violates 21 U.S.C. §343(a)(1) ("a food shall be deemed to be misbranded if its labeling is false or misleading in any particular") as incorporated by California's Sherman Law. Independently, by mislabeling the Products, Defendant violates Cal. Health & Safety Code § 110660 ("any food is misbranded if its labeling is false or misleading in any particular.")

92. Defendant violated and continues to violate the Sherman Law, Article 6, Section 110660, and hence has also violated and continues to violate the "unlawful" prong of the UCL through the false labeling of its Product.

93. Defendant's identical conduct that violates the Sherman Law, also violates FDCA §403(a)(1), 21 U.S.C. §343(a)(1), which declares food misbranded under federal law if its "labeling is false and misleading in any particular." This identical conduct serves as the sole factual basis of each cause of action brought by this Complaint, and Plaintiffs do not seek to enforce any of the state law claims to impose any standard of conduct that exceeds or otherwise violates the FDCA.

94. By committing the unlawful acts and practices alleged above, Defendant has engaged, and continues to be engaged, in unlawful business practices within the meaning of California Business and Professions Code §§17200, *et seq.*

95. Through its unlawful acts and practices, Defendant has obtained, and continues to unfairly obtain, money from members of the Class. As such, Plaintiffs request that this Court cause Defendant to restore this money to Plaintiffs and all members of the Class, to disgorge the profits Defendant made on these transactions, and to enjoin Defendant from continuing to violate the Unfair Competition Law or violating it in the same fashion in the future. Otherwise, the Class may be irreparably harmed and denied an effective and complete remedy if such an order is not granted.

96. In accordance with California Business & Professions Code section 17203, and as Plaintiffs lack an adequate remedy at law, they seek an order enjoining Defendant from continuing to conduct business through unlawful, unfair, and/or fraudulent acts and practices and to commence a corrective advertising campaign.

## <u>THIRD CAUSE OF ACTION</u>

**("Unfair" Business Practices in Violation of**
**The Unfair Competition Law ("UCL"), Bus. & Prof. Code §§ 17200, *et seq*.)**
**(On Behalf of the California Subclass)**

97. Plaintiffs incorporate each and every allegation contained in the paragraphs above as if restated herein.

98. The UCL defines unfair business competition to include any "unlawful, unfair or fraudulent" act or practice, as well as any "unfair, deceptive, untrue or misleading" advertising. Cal. Bus. Prof. Code §17200.

99. A business act or practice is "unfair" under the Unfair Competition Law if the reasons, justifications, and motives of the alleged wrongdoer are outweighed by the gravity of the harm to the alleged victims.

100. Defendant has violated, and continues to violate, the "unfair" prong of the UCL through its misleading description of the Products. The gravity of the harm to

members of the Class resulting from such unfair acts and practices outweighs any conceivable reasons, justifications, or motives of Defendant for engaging in such deceptive acts and practices. By committing the acts and practices alleged above, Defendant engaged, and continues to engage, in unfair business practices within the meaning of California Business and Professions Code §§17200, *et seq.*

101. Through its unfair acts and practices, Defendant obtained, and continue to unfairly obtain, money from members of the Class. As such, Plaintiffs have been injured and request that this Court cause Defendant to restore this money to Plaintiffs and the members of the Class, to disgorge the profits Defendant made on its Products, and to enjoin Defendant from continuing to violate the Unfair Competition Law or violating it in the same fashion in the future. Otherwise, the Class may be irreparably harmed and denied an effective and complete remedy if such an Order is not granted.

102. In accordance with California Business & Professions Code section 17203, and as Plaintiffs lack an adequate remedy at law, they seek an order enjoining Defendant from continuing to conduct business through unlawful, unfair, and/or fraudulent acts and practices and to commence a corrective advertising campaign.

## **<u>FOURTH CAUSE OF ACTION</u>**

**(“Fraudulent” Business Practices in Violation of**
**The Unfair Competition Law (“UCL”), Bus. & Prof. Code §§ 17200, *et seq*.)**
**(On Behalf of the California Subclass**

103. Plaintiffs incorporate each and every allegation contained in the paragraphs above as if restated herein.

104. The UCL defines unfair business competition to include any “unlawful, unfair or fraudulent” act or practice, as well as any “unfair, deceptive, untrue or misleading” advertising. Cal. Bus. & Prof. Code §17200.

105. A business act or practice is “fraudulent” under the Unfair Competition Law if it actually deceives or is likely to deceive members of the consuming public.

106. Defendant's acts and practices of mislabeling its Products in a manner to suggest they contained "100% Natural Flavors."

107. As a result of the conduct described above, Defendant has been, and will continue to be, unjustly enriched at the expense of Plaintiffs and members of the proposed Class. Specifically, Defendant has been unjustly enriched by the profits they have obtained from Plaintiffs and the Class from the purchases of their Products.

108. Through its fraudulent acts and practices, Defendant has improperly obtained, and continue to improperly obtain, money from members of the Class. As such, Plaintiffs request that this Court cause Defendant to restore this money to Plaintiffs and the Class, to disgorge the profits Defendant has made, and to enjoin Defendant from continuing to violate the Unfair Competition Law or violating it in the same fashion in the future. Otherwise, the Class may be irreparably harmed and denied an effective and complete remedy if such an Order is not granted.

109. In accordance with California Business & Professions Code section 17203, and as Plaintiffs lack an adequate remedy at law, they seek an order enjoining Defendant from continuing to conduct business through unlawful, unfair, and/or fraudulent acts and practices and to commence a corrective advertising campaign.

**FIFTH CAUSE OF ACTION**
**(False Advertising in Violation of**
**California Business & Professions Code §§ 17500, *et seq*.)**
**(On Behalf of the California Subclass)**

110. Plaintiffs incorporate each and every allegation contained in the paragraphs above as if restated herein.

111. Defendant uses advertising and packaging to sell its Products. Defendant disseminates advertising regarding its Products which by its very nature is deceptive, untrue, or misleading within the meaning of California Business & Professions Code §§17500, *et seq.* because those advertising statements contained on the labels are

misleading and likely to deceive, and continue to deceive, members of the putative Class and the general public.

112. In making and disseminating the statements alleged herein, Defendant knew or should have known that the statements were untrue or misleading, and acted in violation of California Business & Professions Code §§17500, *et seq*.

113. The misrepresentations and non-disclosures by Defendant of the material facts detailed above constitute false and misleading advertising and therefore constitute a violation of California Business & Professions Code §§17500, *et seq*.

114. Through their deceptive acts and practices, Defendant has improperly and illegally obtained money from Plaintiffs and the members of the Class. As such, Plaintiffs request that this Court cause Defendant to restore this money to Plaintiffs and the members of the Class, and to enjoin Defendant from continuing to violate California Business & Professions Code §§17500, *et seq.*, as discussed above. Otherwise, Plaintiffs and those similarly situated will continue to be harmed by Defendant's false and/or misleading advertising.

115. Pursuant to California Business & Professions Code §17535, Plaintiffs seek an Order of this Court ordering Defendant to fully disclose the true nature of its misrepresentations. Plaintiffs additionally request an Order: (1) requiring Defendant to disgorge its ill-gotten gains, (2) award full restitution of all monies wrongfully acquired by Defendant, and (3) interest and attorneys' fees. Plaintiffs and the Class may be irreparably harmed and denied an effective and complete remedy if such an Order is not granted.

116. As a result, and as they lack an adequate remedy at law, Plaintiffs and the Class are entitled to equitable relief, restitution, and an order for the disgorgement of the funds by which Defendant was unjustly enriched, and pray for relief as set forth below.

**<u>SIXTH CAUSE OF ACTION</u>**
**(Violation of the Consumers Legal Remedies Act,**
**California Civil Code §§ 1750, *et seq*.)**
**(On Behalf of the California Subclass)**

117. Plaintiffs incorporate each and every allegation contained in the paragraphs above as if restated herein.

118. This cause of action is brought pursuant to the Consumers Legal Remedies Act, California Civil Code §§1750, *et seq*. (the "CLRA").

119. Plaintiffs and each member of the proposed Class are "consumers" within the meaning of Civil Code §1761(d).

120. The purchases of the Products by consumers constitute "transactions" within the meaning of Civil Code §1761(e), and the Products constitute "goods" within the meaning of Civil Code §1761(a).

121. Defendant has violated, and continues to violate, the CLRA in at least the following respects:

a. §1770(5) pertaining to misrepresentations regarding the characteristics of goods sold—specifying that misleading representations regarding ingredients violate the CLRA;
b. §1770(7) pertaining to misrepresentations regarding the standard, quality, or grade of goods sold; and
c. § 1770(9) pertaining to goods advertised with the intent not to provide what is advertised.

122. Defendant knew, or should have known, that the labeling of its Products violated consumer protection laws, and that these statements would be relied upon by Plaintiffs and the members of the Class.

123. The representations were made to Plaintiffs and all members of the Class. Plaintiffs relied on the accuracy of the representations on Defendant's labels, which formed a material basis for their decisions to purchase the Products. Moreover, based

on the very materiality of Defendant's misrepresentations uniformly made on or omitted from their Product labels, reliance may be presumed or inferred for all members of the Class.

124. Defendant carried out the scheme set forth in this Complaint willfully, wantonly, and with reckless disregard for the interests of Plaintiffs and the Class, and as a result, Plaintiffs and the Class have suffered an ascertainable loss of money or property.

125. Plaintiffs and the members of the Class request that this Court enjoin Defendant from continuing to engage in the unlawful and deceptive methods, acts and practices alleged above, pursuant to California Civil Code §1780(a)(2). Unless Defendant is permanently enjoined from continuing to engage in such violations of the CLRA, future consumers of Defendant's Products will be damaged by their acts and practices in the same way as Plaintiffs and California Subclass Members.

126. Plaintiff served a CLRA demand pursuant to Civil Code §1782, via U.S. Certified Mail Return Receipt notifying Defendant of the conduct described herein and that such conduct was in violation of particular provisions of Civil Code §1770. Defendant failed to take corrective action within thirty days of receipt of the demand. Plaintiffs now seeks the full measure of damages as provided under Civil Code §1780.

127. Plaintiffs request that this Court enjoin Defendant from continuing to employ the unlawful methods, acts and practices alleged herein pursuant to California Civil Code § 1782. If Defendant is not restrained from engaging in these types of practices in the future, Plaintiffs and the other members of the class will continue to suffer harm. Plaintiffs and those similarly situated have no adequate remedy at law to stop Defendant's continuing practices.

**SEVENTH CAUSE OF ACTION**
**(Violation of New York's Consumer Protection from Deceptive Acts and Practices Law N.Y. GEN. BUS. LAW § 349 et seq.)**
**(On behalf of the New York Subclass)**

128. Plaintiffs incorporate each and every allegation contained in the paragraphs above as if restated herein. Plaintiffs bring this claim on behalf of the New York Subclass for violation of section 349 of New York's Consumer Protection from Deceptive Acts and Practices Law, N.Y. GEN. BUS. LAW § 349 et seq.

129. Section 349 prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in [the State of New York]." N.Y. GEN. BUS. LAW § 349(a).

130. Defendant's labeling and marketing of their Product, as alleged herein, constitute "deceptive" acts and practices, as such conduct misled Plaintiffs and the New York Subclass as to the characteristics and value of the Products.

131. Subsection (h) of Section 349 grants private plaintiffs a right of action for violation of New York's Consumer Protection from Deceptive Acts and Practices Law, as follows:

> In addition to the right of action granted to the attorney general pursuant to this section, any person who has been injured by reason of any violation of this section may bring an action in his own name to enjoin such unlawful act or practice, an action to recover his actual damages or fifty dollars, whichever is greater, or both such actions. The court may, in its discretion, increase the award of damages to an amount not to exceed three times the actual damages up to one thousand dollars, if the court finds the Defendants willfully or knowingly violated this section. The court may award reasonable attorney's fees to a prevailing plaintiff.

N.Y. GEN. BUS. LAW § 349(h).

132. In accordance with subsection (h) of Section 349, Plaintiffs seek an order enjoining Defendants from continuing the unlawful deceptive acts and practices set out above. Absent a Court order enjoining the unlawful deceptive acts and practices, Defendants will continue its deceptive and misleading marketing campaign and, in

doing so, irreparably harm each of the New York Subclass members. As a consequence of Defendants' deceptive acts and practices, Plaintiffs and other members of the New York Subclass suffered an ascertainable loss of monies. By reason of the foregoing, Plaintiffs and other members of the New York Subclass also seek actual damages or statutory damages of $50 per violation, whichever is greater, as well as punitive damages. N.Y. GEN. BUS. LAW § 349(h).

## EIGHTH CAUSE OF ACTION

**(Violation of New York's Consumer Protection from Deceptive Acts and Practices Law, N.Y. GEN. BUS. LAW § 350 et seq.)**
**(On Behalf of the New York Subclass)**

133. Plaintiffs incorporate each and every allegation contained in the paragraphs above as if restated herein. Plaintiffs bring this claim on behalf of the New York Subclass for violation of section 350 of New York's Consumer Protection from Deceptive Acts and Practices Law, N.Y. GEN. BUS. LAW § 350.

134. Section 350 prohibits "[f]alse advertising in the conduct of any business, trade or commerce or in the furnishing of any service in [the State of New York]." N.Y. GEN. BUS. LAW § 350.

135. New York General Business Law Section 350-a defines "false advertising" as "advertising, including labeling, of a commodity, or of the kind, character, terms or conditions of any employment opportunity if such advertising is misleading in a material respect." N.Y. GEN. BUS. LAW § 350-a.1. The section also provides that advertising can be false by omission, as it further defines "false advertising" to include "advertising [that] fails to reveal facts material in the light of such representations with respect to the commodity . . . to which the advertising relates." Id.

136. Defendants' labeling, marketing, and advertising of its Bar, as alleged herein, is "misleading in a material respect" and, thus, constitutes "false advertising,"

as it falsely represents the Products as consisting of characteristics and lawfulness that they do not possess.

137. Plaintiffs seek an order enjoining Defendants from continuing this false advertising. Absent enjoining this false advertising, Defendants will continue to mislead Plaintiffs and the other members of the New York Subclass as to the characteristics of its Products, and in doing so, irreparably harm each of the New York Subclass members.

138. As a direct and proximate result of Defendants' violation of New York General Business Law §350, Plaintiffs and the other members of the New York Subclass have also suffered an ascertainable loss of monies. By reason of the foregoing, Plaintiffs and other members of the New York Subclass also seek actual damages or statutory damages of $500 per violation, whichever is greater, as well as punitive damages. N.Y. GEN. BUS. LAW § 350-e.

## PRAYER FOR RELIEF

THEREFORE, Plaintiffs, on behalf of themselves and on behalf of the other members of the Class and for the Counts so applicable on behalf of the general public request an award and relief as follows:

A. An order certifying that this action is properly brought and may be maintained as a class action, that Plaintiffs be appointed Class Representatives, and Plaintiffs' counsel be appointed Lead Counsel for the Class.

B. Restitution in such amount that Plaintiffs and all members of the Class paid to purchase Defendant's Product or restitutionary disgorgement of the profits Defendant obtained from those transactions, for Causes of Action for which they are available.

C. Compensatory damages for Causes of Action for which they are available.

D. Other statutory penalties for Causes of Action for which they are available.

E. Punitive Damages for Causes of Action for which they are available.

F. A declaration and Order enjoining Defendant from marketing and labeling its Product deceptively, in violation of laws and regulations as specified in this Complaint.

G. An Order awarding Plaintiffs their costs of suit, including reasonable attorneys' fees and pre and post judgment interest.

H. An Order requiring an accounting for, and imposition of, a constructive trust upon all monies received by Defendant as a result of the unfair, misleading, fraudulent, and unlawful conduct alleged herein.

I. Such other and further relief as may be deemed necessary or appropriate.

**DEMAND FOR JURY TRIAL**

Plaintiffs hereby demand a trial by jury on all causes of action or issues so triable.

DATED: October 11, 2026

Respectfully submitted,

Michael D. Braun
**KUZYK LAW, LLP**
2121Avenue of the Stars, Ste. 800
Los Angeles, California 90067
Telephone: (213) 401-4100
Facsimile: (213) 401-0311
Email: mdb@kuzykclassactions.com

Peter N. Wasylyk
**LAW OFFICES OF PETER N. WASYLYK**
1307 Chalkstone Avenue
Providence, RI 02908
Telephone: (401) 831-7730
Facsimile: (401) 861-6064
Email: pnwlaw@aol.com

*Counsel for Plaintiffs*